Mr. Justice Bay
delivered the opinion of the court.
THE point submitted to me by the pleadings in this ease is, whether a horse sent to a public livery stable, to be fed and taken care of, is liable to distress for rent in arrear, due from a tenant to his landlord ?
Formerly all goods and chattels of every kind, found upon the premises, were liable to be distrained for rent in arrear, whether in fact they belonged' to the tenant or a stranger. This authority, allowed by law to a landlord to be his own avenger, or of administering redress to himself, is the relict of the old feudal system, and became ex ; tremely oppressive to the community at large, as no man’s property was safe from the all-grasping power of landholders. The property of strangers, travelling through a country, calling for hospitality, or neighbours visiting, or holding a friendly intercourse with each other, or their cattle straying, or accidentally found on the premises in possession of another, were all liable to be distrained for rent, although they had never made any contract with the owner of the soil, or even knew that any rent was due from the tenant for the use of the lands he occupied. By means whereof, one man’s property was taken away from him forcibly, and without his consent, to pay the debt of a third person, to whom he was never under any obligation, which is clearly inconsistent with every idea of justice, and that security of property which every citizen ought to enjoy in a free country. I am very much disposed to think that this whole system of distress for rent was unapplieable to the circumstances originally of the British colonies, where the ancient feudal, system was utterly unknown, and nothing but colonial dependence could ever have permitted it to gain a footing in America in subservience to British policy; accordingly some of the *40 colonies, particularly Connecticut, (and I am informed Rhode Island) never permitted this law of distress for rent to be introduced; (2 Swift, 89, [a.]) Every thing in that state depends upon contract, by which alone a man ought to be made liable for debt, and his goods subjected to seizure and sale. And it may one day, and that perhaps not a very distant day, become a question well worthy of the attention of the Legislature of this state, whether they will not abolish it in South-Carolina, and place the contract for rent on the same footing with all other contracts between men; in which one man, whatever his landed estate may be, will not be permitted to take the law into his own hands, and be his own minister of justice, by taking the property of an innocent man for the debt due from his tenant, although found upon the premises demised.
In England, it is true, that in process of time, the rigour of this ancient policy of the feudal right in this instance, has been released, and a variety of exceptions were made from this law of distress, and exemptions established from this unjust and unreasonable power of landlords ; asa horse standing in a smith’s shop to be shod, or in a stable of a common inn, or cloth at a tailor’s house, or corn sent to a mill or to market, which are all supposed in common presumption, not to belong to the tenant or occupier of the house; and many other things of the like nature. And so, if a man ride a horse to the’ house of another, and is there taken sick, which occasions him to tarry a few days, his horse cannot be distrained by a landlord ; so also, if a clothier carries wool to spin, neither the horse nor the yarn is liable to distress. All these, and many exemptions have been made from necessity and public utility to the community, as also for the benefit of trade and commerce, which are to be found in the books. But it is said that a public livery stable does not form one of these exceptions. To this, I answer, if things are privileged from distress on the score of necessity, utility and public convenience, as above enumerated, it appears to me that. *41 livery stables, are of as great public convenience and. utility as public inns, and come equally vyithin the sound policy and reason of the law, and therefore ought to be placed upon the same footing as public inns, and although of more recent establishment than public inns, are yet like new trades; they are under the same protection as old ones of the same kind. The true foundation of all the exemptions from this rigorous law of distress, is the detriment, the common-weal would suifer, if such things should be liable to distress under all such pressing circumstances. It is almost unnecessary to "add, that the circumstances and situation of Carolina, call loudly for such an exemption ; for it is well known, and notorious, that almost the whole of the citizens of the state, are obliged occasionally to resort from the country to this great, and only mart ánd sea port to transact their commercial concerns and other business, essentially necessary to their interests ; and' that numerous strangers and travellers are constantly passing and repassing through Charleston, to and from other parts of the union, so that the public iuns could not accommodate the one twentieth part of them. Hence the absolute necessity for these public establishments for the care of horses and carriages, while our citizens and strangers are comfortably lodged and accommodated at private lodgings and boarding houses, during their stay in the city. To expose, therefore, such a mass of valuable property to the • grasp ofinsatiable landlords, would ruin and destroy those valuable establishments of livery stables in every part of the town, or render them so dangerous and uncertain, that no prudent man would make himself liable to such a ha- . zard. The public inconvenience, therefore, would be beyond all calculation. I am aware of the case of Frances <§• Wyatt, (3 Burr. 1504,) where all the law for and against this exemption is brought forward, and even in that case, it was a matter of so much doubt among the judges, that after two learned arguments, they ordered a third. In 1 Blacks. Rep. 485, it is however said, that judgment was afterwards given for the defendant upon the ground of *42 its being part of the' premises demised, which distinguish-» es it from the case of goods sent to be manufactured, and the other exceptions out of the rule ; so that in fact, the whole ground seems to have been changed by the nature of the, judgment. But that case is very distinguishable from the one under consideration, That was a case where a coach had been placed in a house hired from a livery stable keeper, and the owner of the coach might have been considered as an under-tenant, and therefore his goods according to the law of distress, became liable for the rent, and on that account Lord Mansfield said, judgment was given, as it was part of the profits of the premises, i. e. the rent for the use of it. The present case, however, is one where a traveller or a gentleman from the country, sent his horse to be fed and taken care of at a public livery stable, as at a common inn, during his stay in town, and therefore, in my opinion cannot be likened to the case of a man hiring the use of a coach house ; for which reason, according to the best of my judgment, it ought to be placed upon the same footing, exactly, as a common inn, as they both come within the same reason of the law. If any former case had ever been determined in this state upon the subject, I should have found myself bound by it; but as no such case has ever been adjudged within my knowledge, I think, myself at liberty to make such a decision as will best answer the ends of justice at this day in South-Carolina, and best suit the situation and circumstances of the country in point of utility and public convenience. Upon the whole, therefore, my opinion is, that judgment should be entered for the plaintiff in demurrer.
Justices Colcock, Nott, Huger, Johnson, Gantt, and Richardson, concurred.

.) In N. Jersey, no goods and «¡battles found on the premises are liable for rent, but such as belong to the tenant. — f Griffith’s XI- IS. Law *43 .^Register, title N. Jersey, p. 1305, 1306.^ So in Virginia, do. do. 364*. In Ohio, there is no law to distrain for rent; but see as to all the differ, ent states, the above very useful and praiseworthy wort of Judge Grif-Jith. It is published in numbers, at Burlington, N. Jersey, and should be in the office of all such gentlemen as are disposed to have a succinGt and correct view of the systems of law and jurisprudence in the several states. B.-